UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:22-cv-24091

GHADA HUSSEY,

    Plaintiff,

v.

ROYAL CARIBBEAN GROUP,

    Defendant.

_____/

**COMPLAINT FOR DAMAGES AND DEMAND FOR TRIAL BY JURY[1]**

Plaintiff, GHADA HUSSEY (hereinafter "HUSSEY"), through undersigned counsel, sues Defendant, ROYAL CARIBBEAN GROUP, (hereinafter "ROYAL"), and demands trial by jury, stating as follows:

**PARTIES AND JURISDICTION**

1. HUSSEY seeks damages in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees.

2. This Court has admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.

3. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states and/or citizens of a state and citizens or subjects of a foreign state.

4. Suit is filed in federal court because of the federal forum selection clause in the passenger contract ticket issued by ROYAL.

5. HUSSEY is *sui juris* and is a resident and citizen of the state of Florida.

---

[1] When this complaint refers to a numbered paragraph, such as "paragraph 14" for example, unless otherwise stated, it is referring to the corresponding numbered paragraph of this complaint.

**ARONFELD TRIAL LAWYERS**
Aronfeld.com

6. ROYAL is a citizen of the state of Florida and the nation of Liberia.

7. ROYAL is a foreign corporation that is authorized to conduct and that does conduct business in the state of Florida, that at all times material hereto was and is doing business in Miami-Dade County, Florida, and that maintains its corporate headquarters and principal place of business in Miami-Dade County, Florida.

8. ROYAL, at all times material hereto, personally and/or through an agent, in Miami-Dade County, Florida, in the Southern District of Florida:

    a. Operated, conducted, engaged in, or carried on a business venture; and/or

    b. Had an office or agency; and/or

    c. Engaged in substantial activity; and/or

    d. Committed one or more of the acts stated in Florida Statutes, §§ 48.081, 48.181 or 48.193.

9. All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## FACTUAL ALLEGATIONS

10. At all times material hereto, ROYAL owned, leased, chartered, operated, maintained, managed, and/or controlled the subject cruise ship, *the Independence of the Seas*.

11. HUSSEY'S incident occurred on or about November 8, 2022, while she was a fare paying passenger on ROYAL'S vessel, *the Independence of the Seas*.

12. On or about November 8, 2022, at approximately 1:30PM, as HUSSEY traversed the deck 11 in a normal and proper manner, she slipped and fell on a foreign transitory substance which appeared to be water.

13. As a result, HUSSEY sustained severe injuries that include, but are not limited to, injuries to her back, right hip, right leg and right foot.

14. At all relevant times, the dangerous and/or risk creating conditions include, but are not limited to the following:

   a. The surface HUSSEY slipped on lacked adequate slip resistant material, such as anti-slip mats, which caused the subject surface to become unreasonably slippery, and which caused HUSSEY to slip and fall.

   b. There were no reasonable safety measures such as reasonable handrails HUSSEY could grab in the subject area during her fall, which caused HUSSEY's injuries to be more severe, since if she was able to grab onto something reasonable during her fall, she would have been able to mitigate her injuries, as her fall would not have been as severe, and her injuries would therefore not have been as severe.

   c. The subject foreign transitory substance/water, which caused HUSSEY'S incident and injuries because she slipped on this substance.

   d. There was a passenger sitting on one of the chairs in the subject area near where the subject surface was, and the bathing suit of this passenger was dripping with water that made the subject surface wet, but ROYAL had no reasonable mechanisms available for passengers to dry off near the subject area, ROYAL had no reasonable policies and procedures requiring persons to dry off when they were in the subject area, or ROYAL failed to enforce any such policies and procedures.

   e. There was an unreasonable number of passengers, over ten, in the subject area,

which was caused by ROYAL'S crewmembers' failure to control the crowd of these passengers such that an acceptable number of passengers were in the subject area. This caused HUSSEY'S incident and injuries because the crowd prevented her from seeing the subject foreign transitory substance/water, and therefore caused her to slip on the subject foreign transitory substance/water.

    f. The crewmembers in the vicinity of the subject area failed to warn HUSSEY of the above dangerous conditions. This failure to warn caused HUSSEY's incident for the reasons discussed previously as to the previous dangerous conditions.

    g. Other dangerous conditions which will be revealed during discovery.

15. Each of these dangerous conditions was a sufficient cause of HUSSEY'S incident and injuries, each of these conditions caused HUSSEY'S incident and injuries, and HUSSEY is alleging that ROYAL was negligent as to each of these conditions in the alternative.[2]

16. ROYAL either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the following:

    a. There were anti-slip mats in the vicinity of the subject area but not in the subject area which means that ROYAL failed to place anti-slip mats in and/or that extended all the way up to the subject area, and/or

    b. ROYAL has policies/procedures requiring its crewmembers to position the anti-slip mats on the deck floors to prevent injuries resulting in personal injury, which shows that

---

[2] A sufficient cause means a cause that, acting alone, is sufficient to cause an effect. (https://www.verywellhealth.com/understanding-causality-necessary-and-sufficient-3133021). In this case, this means that each dangerous conditions HUSSEY has alleged alone was a cause of his incident such that the only way ROYAL could have prevented HUSSEY'S incident was to have adequately warned of or remedied each of these conditions.

    ROYAL knew or should have known that deck floors are slippery without anti-slip mats.

c. There were warning signs in the subject area that stated that "surfaces may be slippery when wet" and that the floor was wet. However, this warning was not in a location where HUSSEY or any reasonable person could reasonably see or appreciate prior to HUSSEY's fall.

d. Furthermore, HUSSEY observed ROYAL crewmembers in the subject area at the time of the incident, and these crewmembers were in the immediate vicinity, such that HUSSEY reasonably infers that these crew members regularly used, observed, and tended to the subject area, and therefore was or should have been aware of the dangerous and/or risk-creating conditions discussed in paragraph 14, and should have warned of and/or removed these conditions.

e. ROYAL participated in the installation and/or design of the subject area, or alternatively, ROYAL accepted the subject area with design defects present after having been given an opportunity to inspect the ship and materials on it, including the subject area, such that ROYAL should have known of the design defects of the subject area before providing them for public use. These design defects include, but are not limited to, the dangers outlined in paragraph 14(a-d).

f. There are relevant safety standards/recommendations/other guidelines regarding the safety of the subject area, including, but not limited to, prohibitions and/or recommendations against the deficiencies discussed in paragraph 14, and ROYAL should have known of these standards/recommendations/other guidelines because whether such standards/recommendations/other guidelines are legally required for ROYAL to comply with or not, a fact-finder is entitled to determine, if it so choses,

    that these standards/recommendations/other guidelines show what a reasonable cruise line should have done.

    g. ROYAL also knew or should have known of these dangerous conditions through inspecting the subject area involved in HUSSEY'S incident, and if it did not know of these dangerous conditions, this was because ROYAL failed to adequately inspect the subject area prior to HUSSEY'S incident.

    h. Previous passengers in prior cases suffered incidents involving similar dangers on ROYAL'S ships (including Royal Caribbean International, Celebrity Cruises, and Silversea Cruises), including, but not limited to *Schleife v. Royal Caribbean Cruises, Ltd.*, No. 19-22776, 2021 WL 1723673, at *2 (S.D. Fla. Apr. 30, 2021), and *Prokopenko v. Royal Caribbean Cruises Ltd.*, No. 10-20068-CIV, 2010 WL 1524546, at *1 (S.D. Fla. Apr. 15, 2010).

    i. Moreover, ROYAL knew or should have known of these dangerous conditions for other reasons that will be revealed through discovery.

17. At all times relevant, the subject area was unreasonably dangerous, risk-creating, defective, improperly designed, improperly installed, and/or otherwise unsafe.

18. The subject area and the vicinity lacked adequate safety features to prevent or minimize HUSSEY'S incident and/or injuries.

19. These hazardous conditions were known, or should have been known, to ROYAL in the exercise of reasonable care.

20. These hazardous conditions existed for a sufficient period of time before the incident that ROYAL knew or should have been aware of them.

21. These conditions were neither open nor obvious to reasonable passengers, including HUSSEY, and ROYAL failed to adequately warn HUSSEY of the dangers. ROYAL failed to provide reasonable warnings such as, for example, a warning cone in the subject area that was not in a location HUSSEY could not see. The dangerous conditions that ROYAL needed to warn HUSSEY of are those discussed in paragraph 14(a-g).

22. At all times relevant, ROYAL failed to adequately inspect the conditions discussed in paragraph 14(a-g), as well as the subject area and the vicinity, for dangers. For example, ROYAL was required, by its own policies and procedures, to inspect the subject area in certain intervals of time (such as, for example, every fifteen minutes), to ensure that the subject surface was not unreasonably slippery. However, ROYAL failed to inspect the subject area during the intervals its own policies and procedures required, thereby causing it to be unable to address the unreasonable slipperiness of the subject surface prior to HUSSEY'S incident.

23. At all times relevant, ROYAL had the ability to remedy the dangerous conditions, but failed to do so. For example, ROYAL could have placed anti-slip mats in subject area so that the walking path was adequately slip resistant, but ROYAL failed to do so. The dangerous conditions that ROYAL needed to remedy are those discussed in paragraph 14.

24. At all times relevant, ROYAL failed to maintain the conditions discussed in paragraph 14(a-e) in a reasonably safe condition. For example, ROYAL failed to perform regular upkeep on the subject area, including, but not limited to, by failing to apply and to regularly apply slip resistant material to the subject surface, including anti-slip mats, to prevent it from becoming unreasonably slippery.

25. At all times relevant, ROYAL participated in the design and/or approved the design of the subject area involved in HUSSEY'S incident.

26. At all times relevant, ROYAL participated in the installation and/or approved the installation of the flooring involved in HUSSEY'S incident.

27. The crewmembers of *the Independence of the Seas* were in regular full-time employment of ROYAL and/or the ship, as salaried crewmembers.

28. ROYAL'S crewmembers, employees, and/or agents were subject to the ship's discipline and master's orders, and ROYAL had the right to hire and fire its crewmembers, employees, and/or agents.

29. ROYAL is directly responsible and liable for their actions and the actions of its crewmembers, employees, and/or agents.

30. The crewmembers, including the medical staff, were employees and/or actual agents and/or apparent agents of ROYAL, and acted within the course and scope of their employment and/or agency agreement and/or relationship.

31. The crewmembers were represented to HUSSEY and the ship's passengers as employees of ROYAL through signs, documents, and/or uniforms. The crewmembers were also paid a salary and/or hourly wage by ROYAL. ROYAL knew that the crewmembers represented themselves to be employees of ROYAL and allowed them to represent themselves as such. HUSSEY detrimentally relied on these representations as HUSSEY would not have proceeded on the subject cruise had HUSSEY believed the crewmembers were not employees of ROYAL.

## COUNT I
## NEGLIGENT FAILURE TO INSPECT

32. HUSSEY hereby adopts and re-alleges each and every allegation in paragraphs 1-31 as if set forth herein.

33. ROYAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

34. This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately inspecting the conditions discussed in paragraph 14(a-g), as well as the subject area and the vicinity, for dangers.

35. At all times material, ROYAL, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with ROYAL breached the duty of reasonable care owed to HUSSEY and were negligent by failing to adequately inspect the conditions discussed in paragraph 14(a-g), as well as the subject area and the vicinity, for dangers, such that the unreasonably risk creating and/or dangerous conditions discussed in paragraph 14(a-g) were present at the time of HUSSEY'S incident.

36. ROYAL either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 18.

37. These risk-creating and/or dangerous conditions were caused by ROYAL'S failure to adequately inspect the conditions discussed in paragraph 14(a-g), as well as the subject area and the vicinity.

38. ROYAL'S breach was the cause in-fact of HUSSEY'S great bodily harm in that, but for ROYAL'S breach HUSSEY'S injuries would not have occurred.

39. Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

40. ROYAL'S breach proximately caused HUSSEY great bodily harm in that the incident that occurred was a foreseeable result of ROYAL'S breach.

41. As a result of ROYAL'S negligence, HUSSEY has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of HUSSEY'S vacation, cruise, and transportation costs.

42. The losses are permanent and/or continuing in nature.

43. HUSSEY suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, GHADA HUSSEY, demands judgment against Defendant, ROYAL CARIBBEAN GROUP, for damages suffered and costs incurred, as well as for damages and costs that HUSSEY will suffer and incur in the future, as a result of his bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, lost earning capacity, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT II
## NEGLIGENT FAILURE TO MAINTAIN

44. HUSSEY hereby adopts and re-alleges each and every allegation in paragraphs 1-31 as if set forth herein.

45. ROYAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

46. This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately maintaining the conditions discussed in paragraph 14(a-e).

47. At all times material, ROYAL, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with ROYAL, breached the duty of reasonable care owed to HUSSEY and were negligent by failing to adequately maintain the conditions discussed in paragraph 14(a-e), such that the unreasonably risk creating and/or dangerous conditions discussed in paragraph 14(a-e) were present at the time of HUSSEY'S incident.

48. ROYAL either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 18.

49. Moreover, these risk-creating and/or dangerous conditions were caused by ROYAL'S failure to adequately maintain the conditions discussed in paragraph 14(a-e).

50. ROYAL'S breach was the cause in-fact of HUSSEY'S great bodily harm in that, but for ROYAL'S breach HUSSEY'S injuries would not have occurred.

51. Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

52. ROYAL'S breach proximately caused HUSSEY great bodily harm in that the incident that occurred was a foreseeable result of ROYAL'S breach.

53. As a result of ROYAL'S negligence, HUSSEY has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of HUSSEY'S

vacation, cruise, and transportation costs.

54. The losses are permanent and/or continuing in nature.

55. HUSSEY has suffered these losses in the past and will continue to suffer such losses in the future.

**WHEREFORE**, Plaintiff, GHADA HUSSEY, demands judgment against Defendant, ROYAL CARIBBEAN GROUP, for damages suffered and costs incurred, as well as for damages and costs that HUSSEY will suffer and incur in the future, as a result of his bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, lost earning capacity, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT III
## NEGLIGENT FAILURE TO REMEDY

56. HUSSEY hereby adopts and re-alleges each and every allegation in paragraphs 1-31 if set forth herein.

57. ROYAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

58. This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately remedying the dangerous conditions discussed in paragraph 14.

59. At all times material, ROYAL, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with ROYAL, breached the duty of reasonable care owed to HUSSEY and were negligent by failing to adequately remedy the dangerous conditions discussed in paragraph 14.

60. ROYAL either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 18.

61. Moreover, these risk-creating and/or dangerous conditions were caused ROYAL'S failure to adequately remedy the dangerous conditions discussed in paragraph 14.

62. ROYAL'S breach was the cause in-fact of HUSSEY'S great bodily harm in that, but for ROYAL'S breach HUSSEY'S injuries would not have occurred.

63. Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

64. ROYAL'S breach proximately caused HUSSEY great bodily harm in that the incident that occurred was a foreseeable result of ROYAL'S breach.

65. As a result of ROYAL'S negligence, HUSSEY has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of HUSSEY'S vacation, cruise, and transportation costs.

66. The losses are permanent and/or continuing in nature.

67. HUSSEY has suffered these losses in the past and will continue to suffer such losses in the future.

**WHEREFORE**, Plaintiff, GHADA HUSSEY, demands judgment against Defendant, ROYAL CARIBBEAN GROUP, for damages suffered and costs incurred, as well as for damages

and costs that HUSSEY will suffer and incur in the future, as a result of his bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, lost earning capacity, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT IV
## NEGLIGENT FAILURE TO WARN OF DANGEROUS CONDITION

68. HUSSEY hereby adopts and re-alleges each and every allegation in paragraphs 1-31 as if set forth herein.

69. At all times relevant, ROYAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers, including HUSSEY.

70. Such duty includes, but is not limited to, the duty that ROYAL owes to warn passengers of any dangers that it knew or should have known were not open and obvious to HUSSEY.

71. Such duty also includes, but is not limited to, the duty to warn passengers of hazards, which passengers may reasonably be expected to encounter.

72. At all times material, ROYAL, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with ROYAL, breached the duty of reasonable care owed to HUSSEY and was negligent by failing to warn HUSSEY of the dangerous conditions discussed in paragraph 14(a-g).

73. Furthermore, ROYAL knew or should have known of these dangerous conditions for the reasons discussed in paragraph 18.

74. These dangerous conditions were also created by ROYAL.

75. ROYAL failed to adequately ensure there were no dangerous conditions that passengers needed to be warned of, and/or ROYAL failed to warn HUSSEY despite knowing of the dangers.

76. These dangerous conditions existed for a period of time before the incident.

77. These conditions were neither open nor obvious to HUSSEY.

78. ROYAL'S breach was the cause in-fact of HUSSEY'S great bodily harm in that, but for ROYAL'S breach HUSSEY'S injuries would not have occurred.

79. Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

80. ROYAL'S breach proximately caused HUSSEY great bodily harm in that the incident that occurred was a foreseeable result of ROYAL'S breach.

81. As a result of ROYAL'S negligence, HUSSEY has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of HUSSEY'S vacation, cruise, and transportation costs.

82. The losses are permanent and/or continuing in nature.

83. HUSSEY has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, GHADA HUSSEY, demands judgment against Defendant, ROYAL CARIBBEAN GROUP, for damages suffered and costs incurred, as well as for damages

and costs that HUSSEY will suffer and incur in the future, as a result of his bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, lost earning capacity, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT V**
**NEGLIGENT DESIGN, INSTALLATION, AND/OR APPROVAL OF THE SUBJECT AREA AND THE VICINITY**

84. HUSSEY hereby adopts and re-alleges each and every allegation in paragraphs 1-31 as if set forth herein.

85. ROYAL negligently designed, as well as negligently approved of the design, of the dangerous conditions discussed in paragraph 14(a-e).

86. At all times material hereto, ROYAL owed a duty to its passengers, and in particular a duty to HUSSEY, not to permit dangerous conditions to be in places where they could harm passengers, such as those discussed in paragraph 14(a-e), as well as to design and install reasonable safeguards.

87. At all times material hereto, ROYAL participated in the design process of the subject vessel by generating design specifications for the shipbuilder to follow, and to put the vessel on which HUSSEY was injured into the channels of trade, and/or ROYAL approved of the subject vessel's design, including the design of the subject area and the vicinity.

88. At all times material hereto, ROYAL manufactured, designed, installed, and/or approved of *the Independence of the Seas*, including providing specifications to the shipbuilder in the original build process, and/or during its refurbishments, and as such owed a duty to its

passengers, and in particular a duty to HUSSEY, to design, install and/or approve of the conditions discussed in paragraph 14(a-e) without the deficiencies discussed in paragraph 14(a-e).

89. At all times material hereto, ROYAL through its agents and/or employees who were acting in the course and scope of their employment and/or agency with ROYAL, designed, installed, and/or approved of the subject area and the vicinity involved in HUSSEY'S incident, which was also in violation of the applicable industry standards/recommendations and/or other guidelines.

90. ROYAL provides design elements of the vessels to the ship builder and/or approves of design elements which include the subject area and the vicinity.

91. ROYAL maintains the contractual right to participate, review, modify, and/or reject the design plans and drawings of the vessels, including *the Independence of the Seas*, during the new build process.

92. ROYAL has the right to enter the ship and inspect it during construction to ensure that it is being constructed in accordance with the design specifications and has a right to insist on changes when safety concerns are identified.

93. ROYAL has the right to inspect and reject design elements before taking possession of the ship.

94. However, ROYAL permitted the dangerous conditions discussed in paragraph 14(a-e) to be present in the subject area and the vicinity without correcting these design deficiencies and did not design and install reasonable safeguards.

95. Furthermore, ROYAL knew or should have known of these dangerous conditions for the reasons discussed in paragraph 18.

96. The design flaws that made the subject area and the vicinity involved in HUSSEY'S

incident unreasonably dangerous were the direct and proximate cause of HUSSEY'S injuries.

97. ROYAL is liable for the design flaws of the vessel, including of the subject area and the vicinity involved in HUSSEY'S incident, which it knew or should have known of.

98. ROYAL failed to correct and/or remedy the defective conditions, despite the fact that ROYAL knew or should have known of the danger(s).

99. ROYAL'S breach was the cause in-fact of HUSSEY'S great bodily harm in that, but for ROYAL'S breach HUSSEY'S injuries would not have occurred.

100. Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

101. ROYAL'S breach proximately caused HUSSEY great bodily harm in that the incident that occurred was a foreseeable result of ROYAL'S breach.

102. As a result of ROYAL'S negligence, HUSSEY has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of HUSSEY'S vacation, cruise, and transportation costs.

103. The losses are permanent and/or continuing in nature.

104. HUSSEY has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, GHADA HUSSEY, demands judgment against Defendant, ROYAL CARIBBEAN GROUP, for damages suffered and costs incurred, as well as for damages

and costs that HUSSEY will suffer and incur in the future, as a result of his bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, lost earning capacity, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff, GHADA HUSSEY, demands trial by jury on all issues so triable.

**Dated:** December 16, 2022.

Respectfully submitted,

*/s/ Spencer M. Aronfeld*
**Spencer M. Aronfeld, Esq.**
Florida Bar No.: 905161
aronfeld@aronfeld.com
**Matthias M. Hayashi**
Florida Bar No.: 115973
mhayashi@aronfeld.com
**Abby H. Ivey, Esq.**
Florida Bar No.: 1002774
aivey@aronfeld.com
**ARONFELD TRIAL LAWYERS**
One Alhambra Plaza, Penthouse
Coral Gables, Florida 33134
P:      (305) 441.0440
F:      (305) 441.0198
***Attorneys for HUSSEY***